**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**Carolyn Graham**</u>

       **v.**                        **Case No. 02—cv—243—PB**

<u>**Jo Anne Barnhart, Commissioner,**</u>
<u>**Social Security Administration**</u>

<u>**MEMORANDUM AND ORDER**</u>

Pursuant to 42 U.S.C. § 405(g), plaintiff Carolyn Graham challenges the Commissioner of Social Security's determination that she is not entitled to disability insurance benefits ("DIB").  She argues that the Administrative Law Judge ("ALJ") who evaluated her claim improperly ignored residual functional capacity ("RFC") assessments performed by two of her physicians and improperly evaluated the credibility of her testimony.  For the reasons set forth below, I conclude that the ALJ's decision is supported by substantial evidence.  I therefore deny Graham's motion to reverse (Doc. No. 18) and grant the Commissioner's motion to affirm (Doc. No. 19).

## I.  **BACKGROUND**

### A.  **Procedural History**

Graham's disability insured status expired on September 30, 2001.  Administrative Record Transcript ("Tr.") at 290.  She applied for DIB on July 9, 2001.  Id. at 131.  She alleged that she became disabled on September 24, 1999, due to complications from a masectomy.  Id.

Graham's application was denied, id. at 59, and she requested an administrative hearing.  Id. at 65.  On December 13, 2001, ALJ Frederick Harap held a hearing to evaluate her claim. Id. at 83.  ALJ Harap determined that Graham was not disabled because she retained the RFC to perform jobs that existed in substantial numbers in the national economy.  Id. at 56.  The Appeals Council declined to review ALJ Harap's decision.  Id. at 115.

Graham sought judicial review of ALJ Harap's decision with this court, however I remanded the case because the hearing tape was inaudible.  Id. at 117-19; see Doc. Entry 9/23/02.  ALJ Harap held a second hearing on May 7, 2003.  Id. at 21.  He reached the same conclusion, id. at 19, and the Appeals Council subsequently

-2-

declined to review the decision.  Id. at 7.

Graham sought judicial review of ALJ Harap's second decision, and I remanded the case a second time because the hearing tape was again inaudible.  Id. at 384; see Doc. Entry 7/13/04.  On October 26, 2004, ALJ Robert Klingbiel held a third hearing.  He too determined that Graham was not disabled because her RFC allowed her to perform jobs that existed in substantial numbers in the national economy.  Id. at 294-96.  Graham now seeks review of ALJ Klingbiel's decision.

**B.  <u>Graham's Education and Work History</u>**

Graham was born on July 6, 1953.  Id. at 304.  She was 51 years old when ALJ Klingbiel issued his decision.  Id. at 290. Graham has a ninth-grade education.  Id. at 304.  In the past, she worked as a lacer/stamper/sewer in a boot factory, a tester/assembler in a heater factory, a chambermaid, a dishwasher/kitchen helper, and a sewer in a sewing factory.  Id. at 340.

**C.  <u>Medical Evidence</u>**

On September 24, 1999, Graham underwent a routine bilateral mammography examination.  Id. at 199.  The mammogram revealed an

irregularity in Graham's right breast.  Id.  A subsequent biopsy showed that Graham had breast cancer.  Id. at 190.  On November 12, 1999, Dr. Sean Bears performed a masectomy.  Id. at 235. Graham "tolerated the procedure well" and there were no complications.  Id.

Four days after the surgery, Dr. Bears examined Graham and determined that she was "doing well with mild discomfort in the surgical site."  Id. at 244.  Graham began a course of six chemotherapy treatments supervised by Dr. L. Herbert Maurer.  Id. at 239.  On February 2, 2000, Dr. Bears examined Graham and noted that she was experiencing nausea and sinus problems, but otherwise was tolerating the chemotherapy well.  Id. at 246.  Her surgical wound was healing properly.  Id.

By June 26, 2000, Graham had completed chemotherapy.  Id. at 248.  Although she had gained a significant amount of weight and was bothered by a mass of scar tissue in her right arm, she was generally feeling well.  Id.  On August 2, 2000, Dr. Thomas Davis examined Graham and noted that she had "good" range of motion in her right arm.  Id. at 204.

On June 1, 2001, Dr. Bears examined Graham and observed that she was "doing very well from a breast cancer standpoint."  Id.

at 250.  Although Graham reported that she had pain in her right
hand and arm if she used them for extended periods of time, Dr.
Bears was unable to link the pain to masectomy complications.
Id.  He determined that the pain was not severe enough to pursue
any kind of treatment.  Id.

On November 29, 2001, nearly a month after her insured
status expired, Graham saw Dr. Frank Graf at her attorney's
suggestion.  Id. at 254.  Dr. Graf observed that Graham had
sensory deficits above and below her surgical incision.  He
performed Tinel's sign testing, which was positive for pain and
tingling in the right arm.  Id. at 255.  Graham's reflexes were
intact and she was able to raise both arms and bring her hands to
the back of her head and to the small of her back.  Id.  Dr. Graf
determined that Graham had impaired functioning in her right arm
and hand.  Id.  He completed an RFC assessment and found that
Graham could lift twenty pounds occasionally (with pain
afterward) and less than ten pounds frequently (with pain
afterward); that she could stand or walk for fewer than two hours
in an eight-hour workday; that she was limited in her ability to
push and pull; that she could not crawl; that she could
occasionally climb, balance, kneel, crouch, stoop, reach, handle,

-5-

finger, and feel.  _Id._ at 256-58.  This RFC assessment suggests
an inability to perform even sedentary work.  _Id._ at 293.  In a
letter dated May 15, 2003, Dr. Graf stated that the observations
he made during the November 29, 2001 examination reasonably
reflected Graham's condition as of the close of the insured
period.

On January 11, 2002, Dr. Lawrence Schissel examined Graham.[1]
_Id._ at 281.  Dr. Schissel determined that Graham had normal vital
signs and no focal neurologic deficits or evident loss of
strength or muscle tone.  _Id._  Graham told Dr. Schissel that she
had been suffering from profound fatigue, and he diagnosed the
fatigue as resulting from a variety of factors including
depression and the side effects of Tamoxifen, a prescription drug
that Graham takes to prevent cancer recurrence.  _Id._

On May 1, 2003, Dr. Schissel completed an RFC assessment for
Graham.  He found that she could lift ten pounds occasionally and
less than ten pounds frequently; that she could stand or walk for

---

[1]  Graham was Dr. Schissel's patient prior to her breast
cancer surgery.  He referred her to an oncologist, and was "aware
of her ongoing treatment for breast cancer through communications
with her specialists," but did not treat her between October 1999
and January 2002.  Tr. at 263.

less than two hours out of an eight-hour workday; that she could
sit for less than six hours out of an eight-hour workday; that
she needed frequent periods of rest in a reclined position; that
her ability to push and pull was limited by fatigue; and that she
could occasionally climb, balance, kneel, crouch, crawl, and
stoop.  Id. at 277-78.

**D.  <u>Administrative Evidence</u>**

On June 20, 2001, Graham completed a Disability
Determination Services ("DDS") questionnaire about her daily
activities.  Graham reported that she could take care of herself,
although she struggled with getting in and out of the tub and
with fixing her hair.  Id. at 152.  She stated that she could
clean her house and do ordinary household chores, although those
tasks took a long time to complete and she sometimes required
assistance.  Id. at 153.  Graham also reported caring for her
granddaughter five to seven days per week during the workday.
Id. at 154.

On August 7, 2001, non-physician DDS consultant Paula LeBrun
reviewed Graham's file and completed an RFC assessment.[2]  LeBrun

_____

[2]  The record is unclear as to LeBrun's qualifications.  The
Commissioner has not contested Graham's assertion that LeBrun is

-7-

determined that Graham could occasionally lift 20 pounds; that
she could frequently lift 10 pounds; that she could stand or walk
for about 6 hours in an 8-hour workday and sit for about 6 hours
in an 8-hour workday; that she had unlimited ability to push and
pull; that she had no postural limitations; and that she should
avoid frequent overhead reaching with the right arm.  Id. at 164-
171.

**E.  Graham's Hearing Testimony**

Graham, who was represented by counsel, testified at the
hearing before ALJ Klingbiel.  She stated that she has persistent
numbness in her right arm from the shoulder to the elbow and
intermittent shooting pain and numbness in the rest of the right
arm.  Id. at 310-11.  She also reported that her right arm is
weak, making it difficult for her to lift things.  Id. at 315.
Graham's husband testified that Graham has difficulty completing
household tasks because of pain in her arm.  Id. at 335.

Graham also testified that since her masectomy, she tires
very quickly.  Id. at 322.  She believes this persistent fatigue

---

not a physician, so I assume that she is not a medical doctor or
other "acceptable medical source."  See 20 C.F.R. §
404.1513(a)(1)-(5).

to be a side effect of Tamoxifen.  Id. at 313.  Graham explained

that she has to rest for several hours after two hours of

standing or walking.  Id. at 316–17.  For example, she reported

being too tired to cook meals on a regular basis, id. at 320, or

to grocery shop.  Id. at 324.  Graham's husband also testified

that she needs to rest after two hours of activity.  Id. at 335.

Graham told ALJ Klingbiel that her granddaughter lived with

her between approximately 2000 and 2004.  Id. at 331–33.  During

that time, Graham regularly cared for the child.  Id. at 336.

**F.    Vocational Expert's Testimony**

Vocational Expert ("VE") Howard Steinberg also testified at

the hearing.  He stated that most of Graham's past work would be

classified as light, unskilled work by the Dictionary of

Occupational Titles.  Id. at 340.

ALJ Klingbiel asked VE Steinberg to consider a hypothetical

claimant with Graham's education and work history and a capacity

for work consistent with following RFC: occasional lifting of 20

pounds and more frequent lifting of 10 pounds; very little

overhead reaching ability; and limited ability to use the right

hand and arm routinely.  VE Steinberg concluded that the

hypothetical claimant would not be able to perform any of

Graham's past jobs.  Id. at 340–41.  However, the hypothetical claimant would be able to perform several other jobs, including toll collector, officer helper, construction flagger, furniture rental clerk, security guard, storage facility rental clerk, school bus monitor, and sales attendant.  Id. at 342–43.

Graham's attorney asked VE Steinberg to consider a hypothetical claimant with Graham's education and work history and a capacity for work consistent with the RFC provided by Dr. Graf.  Id. at 344.  VE Steinberg concluded that the limitations described by Dr. Graf would significantly impact the hypothetical claimant's ability to perform the jobs he mentioned in response to ALJ Klingbiel's hypothetical, with the exception of the security guard job.  Id. at 345–47.

Finally, Graham's attorney asked VE Steinberg to consider a hypothetical claimant with Graham's education and work history and a capacity for work consistent with the RFC provided by Dr. Schissel.  VE Steinberg stated that this hypothetical claimant would essentially have no capacity for work.  Id. at 350.

## II.  **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), I am authorized to review

-10-

the pleadings submitted by the parties and the transcript of the administrative record and enter a judgment affirming, modifying, or reversing the ALJ's decision.  The ALJ's factual findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is that which "'a reasonable mind, reviewing the evidence in the record as a whole, could accept . . . as adequate to support [the] conclusion.'"  Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  Thus, the ALJ's decision is supported by substantial evidence if it is reasonable.

The ALJ is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence.  Id. at 769.  If the ALJ's findings as to these matters are reasonable, I must uphold them "even if the record arguably could justify a different conclusion."  Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988).  On the other hand, the ALJ's findings are not conclusive if they were "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  Nguyen v. Chater, 172

F.3d 31, 35 (1st Cir. 1999).  I apply these standards to the

arguments Graham raises in her appeal.


### III.  <u>ANALYSIS</u>

The Social Security Act defines disability as the "inability

to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A).  In order to determine

whether a claimant has a disability resulting from a physical or

medical impairment, the ALJ conducts a five-step sequential

analysis.  20 C.F.R. § 404.1520(a).  The claimant has the burden

at each of the first four steps to show that:

> (1) the claimant is not engaged in substantial gainful
> activity; <u>and</u>
> (2) the claimant has a severe impairment; <u>and</u>
> (3) the impairment meets or equals a specific impairment
> listed in the SSA regulations; <u>or</u>
> (4) the impairment prevents or prevented the claimant from
> performing past relevant work.

<u>Id.</u> § 404.1520(a)(4)(i)-(iv).  At step five, the burden shifts to

the Commissioner to show "that there are jobs in the national

economy that [the] claimant can perform." Heggarty v. Sullivan,
947 F.2d 990, 995 (1st Cir. 1991). The ALJ's conclusions at
steps four and five are informed by his assessment of the
claimant's RFC, which is a description of the kind of work that
the claimant is able to perform despite her impairments. 20
C.F.R. §§ 404.1520, 404.1545.

ALJ Klingbiel found that Graham was not disabled at the
fifth step of the sequential analysis. ALJ Klingbiel determined
that Graham retained the RFC to perform "a substantially full
range of light exertion work . . . . with a limitation for
overhead reaching with her right arm and frequent use of her
right index [finger] and thumb." Tr. at 292-294. Specifically,
he limited Graham to occasional lifting of twenty pounds and six
hours of standing or walking in an eight-hour day. Id. at 292.
Based on this RFC, ALJ Klingbiel concluded that Graham could not
perform any of her previous work, but could perform other light
exertion jobs existing in the national economy. Id. at 294.

Graham challenges ALJ Klingbiel's assessment of her RFC.
She argues that in formulating the RFC, ALJ Klingbiel (1)
improperly gave little weight to the RFC assessments provided by
Drs. Schissel and Graf; (2) improperly formulated his own RFC

-13-

assessment; and (3) improperly discredited Graham's testimony about her capacity for work.  I discuss each of Graham's arguments in turn.

**A.   Dr. Schissel's RFC Assessment**

ALJ Klingbiel gave little weight to Dr. Schissel's RFC assessment, which described limitations consistent with sedentary work rather than light work.  Tr. at 293.  Graham claims that this was erroneous because Dr. Schissel is a "treating source" whose RFC assessment must be given controlling weight.  See 20 C.F.R. § 404.1527(d)(2); Social Security Ruling ("SSR") No. 96-2p, 1996 SSR LEXIS 9, at *1 (1996).  I disagree.

First, Dr. Schissel is not a "treating source."  A claimant's physician is a treating source only if he had "an ongoing treatment relationship" with the claimant.  20 C.F.R. §§ 404.1502, 416.902.  An "ongoing treatment relationship" is one in which the claimant sees or has seen the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)."  Id.

The time frame relevant to ALJ Klingbiel's disability determination (hereinafter, "the insured period") is the period

-14-

of time between the alleged onset of Graham's disability in September 1999 and the expiration of her insured status in September 2001.  Dr. Schissel referred Graham to an oncologist for breast cancer surgery in October 1999 and did not see her again until January 2002.  Thus, Dr. Schissel was not a treating source during the insured period.[3]

Because Dr. Schissel was not a treating source, his RFC assessment was not entitled to controlling weight.  In fact, it was reasonable for ALJ Klingbiel to give little weight to the RFC assessment.  All of the post-masectomy evaluation and treatment that Dr. Schissel provided occurred after Graham's insured status expired.  A retrospective medical assessment may have probative value.  <u>Perez v. Chater</u>, 77 F.3d 41, 48 (2d Cir. 1996).  Here, though, Dr. Schissel gave no indication that his evaluation was retrospective, and it apparently reflected Graham's condition at the time he treated her.  Accordingly, his RFC assessment is of

---

[3]  Although Graham claims that she became disabled when she was diagnosed with breast cancer in September 1999, her impairments allegedly stem from the masectomy, which was not performed until November 1999.  Thus, even if Dr. Schissel saw Graham during September 1999 and October 1999, he did not treat her for the impairment which provides the foundation of her disability claim.

little value with respect to Graham's impairment during the
insured period.

**B.**   **Dr. Graf's RFC Assessment**

Next, Graham challenges ALJ Klingbiel's decision to give
reduced weight to Dr. Graf's RFC assessment, which described
limitations consistent with an inability to perform even
sedentary work.  I conclude that it was reasonable for ALJ
Klingbiel to discount the probative value of Dr. Graf's RFC
assessment.

First, an ALJ may properly give less weight to a medical
opinion that is inconsistent with the record as a whole.  20
C.F.R. § 404.1527(d)(4).  Dr. Graf evaluated Graham once, after
her insured status expired.  His evaluation of her condition is
inconsistent with the evaluation of Dr. Bears, who saw her
several times during the insured period.  Dr. Bears' records
indicate that Graham felt reasonably well following her surgery,
and he noted that any residual pain was not severe enough to
pursue.  The record does not contain any medical evidence
indicating that Graham suffered from severe pain or fatigue
during the insured period.

Second, a medical opinion should be given less weight if it

does not include "relevant evidence to support [the] opinion,
particularly medical signs and laboratory findings."  Id. §
404.1527(d)(3).  Dr. Graf offered no support for his conclusion
that Graham could stand for less than two hours in an eight-hour
day, except to say that Graham had "poor tolerance" for sitting
and walking.  Tr. at 256.  In fact, Dr. Graf noted that Graham's
"general health [was] good."  Id. at 254.  Accordingly, I
conclude that it was reasonable for ALJ Klingbiel to reduce the
weight given to Dr. Graf's RFC assessment.

C.  **ALJ Klingbiel's RFC Assessment**

Graham challenges ALJ Klingbiel's determination that she can
stand or walk for six hours in an eight hour-day.[4]  She argues
that because the only formal RFC assessment reaching that
conclusion was provided by a non-physician, ALJ Klingbiel's
finding lacks substantial evidence.  I disagree.

In assessing a claimant's RFC, the ALJ may consider "all of
the relevant medical and other evidence."  20 C.F.R. §
404.1545(a)(3) (emphasis added).  Here, ALJ Klingbiel "agreed"

---

[4]  The length of time during which Graham can stand or walk
is the only significant difference between ALJ Klingbiel's and
Dr. Graf's RFC assessments.

with the RFC assessment provided by DDS consultant LeBrun, who is not a doctor.  Tr. at 292.  Under the governing SSA regulations, it is appropriate for ALJ Klingbiel to consider a non-physician's RFC assessment, which amounts to "other evidence."  However, it would be erroneous for ALJ Klingbiel to rely exclusively on that RFC assessment.  See Zebulske v. Barnhart, No. 04-49-B, 2004 U.S. Dist. LEXIS 21381, at *5 n.2 (D. Me. Oct. 25, 2004).

In this case, ALJ Klingbiel did not rely solely on LeBrun's RFC assessment.  He also considered the medical records of Dr. Davis and Dr. Bears, both of whom treated Graham during the insured period.  Tr. at 292.  Those records are consistent with LeBrun's determination as to Graham's capacity for standing and walking.  Neither Dr. Davis nor Dr. Bears noted that Graham was experiencing profound fatigue.  Dr. Bears specifically indicated that any lingering pain resulting from the masectomy was not severe enough to pursue.

Graham contends that Dr. Davis' and Dr. Bears' notes amount to "bare medical findings" that ALJ Klingbiel is "not qualified to assess."  See Gordils v. Sec'y of Health and Human Servs., 921 F.2d 327, 329 (1st Cir. 1990).  Again, I disagree.  An ALJ is not "precluded from rendering common-sense judgments about functional

capacity based on medical findings." Id.  Although Dr. Davis and
Dr. Bears did not explicitly address Graham's functional
limitations, they described her as recovering well from her
masectomy and being in generally good health.  It was reasonable
for ALJ Klingbiel to make a "common-sense" determination as to
Graham's RFC based on these medical records.  See id. ("[I]f the
only medical findings in the record suggested that a claimant
exhibited little in the way of physical impairments, but nowhere
in the record did any physician state in functional terms that
the claimant had the exertional capacity to meet the requirements
of sedentary work, the ALJ would be permitted to reach that
functional conclusion himself.")

    ALJ Klingbiel also considered Graham's self-report regarding
her ability to care for her granddaughter and perform housework
during the insured period.  Tr. at 292.  In particular, Graham's
testimony that she cared for her granddaughter several days a
week supports ALJ Klingbiel's determination that she retained the
RFC to stand or walk for six hours in an eight-hour day.

    Because ALJ Klingbiel considered medical evidence and
Graham's testimony in addition to DDS consultant LeBrun's RFC
assessment, I conclude that his finding that Graham could stand

-19-

or walk for six hours in an eight-hour day is supported by
substantial evidence.

**D.   Graham's Credibility**

Finally, Graham argues that ALJ Klingbiel improperly
discredited her subjective testimony that she was not capable of
light exertion work, resulting in a flawed RFC assessment.  In
particular, Graham argues that ALJ Klingbiel failed to address
each of the so-called "Avery factors" when he evaluated her
credibility.  I conclude that ALJ Klingbiel's Avery analysis was
sufficient and his credibility determination is supported by
substantial evidence.

Assessment of the claimant's credibility is the exclusive
province of the ALJ, who observes the claimant, evaluates her
demeanor, and considers how her testimony "fit[s] in with the
rest of the evidence."  Frustaglia v. Sec'y of Health and Human
Servs., 829 F.2d 192, 195 (1st Cir. 1987).  The ALJ's credibility
determination is entitled to deference if it is supported by
substantial evidence.  Id.  In determining the credibility of a
claimant's subjective testimony, the ALJ must consider the entire
record, including objective medical evidence, the claimant's
statements, information provided by physicians and other people,

and any other relevant evidence.  SSR No. 96-7p, 1996 SSR LEXIS
4, at *3 (1996).

The First Circuit has directed that in evaluating a
claimant's subjective complaints of pain and other symptoms, the
ALJ should consider a variety of factors (sometimes known as the
Avery factors) including "(1) [t]he nature, location, onset,
duration, frequency, radiation, and intensity of any pain; (2)
[p]recipitating and aggravating factors (e.g., movement,
activity, environmental conditions); (3) [t]ype, dosage,
effectiveness, and adverse side-effects of any pain medication;
(4) [t]reatment, other than medication, for relief of pain; (5)
[f]unctional restrictions; and (6) [t]he claimant's daily
activities."  Avery v. Sec'y of Health & Human Servs., 797 F.2d
19, 28-29 (1st Cir. 1986); see also SSR No. 96-7p, 1996 SSR LEXIS
4, at *8.  The ALJ's decision "must contain specific reasons for
the finding on credibility, supported by the evidence in the case
record, and must be sufficiently specific to make clear to the
individual and to any subsequent reviewers the weight the
adjudicator gave to the individual's statements and the reasons
for that weight."  SSR No. 96-7p, 1996 SSR LEXIS 4, at *12.
Graham contends that ALJ Klingbiel failed to address the Avery

-21-

factors in sufficient detail.

Detailed written discussion of the <u>Avery</u> factors is desirable, <u>see</u> <u>Frustaglia</u>, 829 F.2d at 195, but an ALJ complies with <u>Avery</u> if he explores the factors at the administrative hearing.  <u>See</u> <u>Lopes v. Barnhart</u>, 372 F. Supp. 2d 185, 192 (D. Mass. 2005) (ALJ complies with <u>Avery</u> where he covers all of the factors at the hearing); <u>Braley v. Barnhart</u>, NO. 04-176-B-W, 2005 U.S. Dist. LEXIS 11070, at *17 (D. Me. June 7, 2005) (ALJ need not "slavishly discuss <u>each</u> <u>Avery</u> factor").  Here, Graham's attorney and ALJ Klingbiel asked Graham questions implicating the four relevant <u>Avery</u> factors at the hearing.[5]  <u>See</u> Tr. at 313 (discussion of the onset/nature of Graham's fatigue); 320-21 (discussion of precipitating and aggravating factors); 316-17, 322-24 (discussion of functional restrictions as a result of Graham's fatigue); 314-15 (discussion of daily activities); <u>see</u> <u>also</u> <u>id.</u> at 152-54 (DDS questionnaire regarding Graham's daily activities).

---

[5]  Graham disputes ALJ Klingbiel's RFC assessment chiefly because it does not credit her subjective testimony about <u>fatigue</u>, which she claims prevents her from standing or walking for longer than two hours in an eight-hour day.  Thus, the <u>Avery</u> factors addressing pain medication and treatment are simply not relevant in this case.

In keeping with SSR No. 96-7p, ALJ Klingbiel gave a specific reason for his determination that Graham's testimony was not entirely credible: he found that Graham's alleged incapacity for even sedentary work was inconsistent with her daily activities during the insured period.  I conclude that this credibility determination is supported by substantial evidence.  In her DDS questionnaire, Graham indicated that her daily activities included cooking breakfast, lunch, and dinner, cleaning her house, doing household chores, and caring for her granddaughter. Id. at 152-54.  Given the level of exertion required to complete household chores and care for a child, it was reasonable for ALJ Klingbiel to discredit Graham's testimony that she could not perform light work.  Accordingly, he properly discounted her testimony in fashioning his RFC assessment.

### IV.  **CONCLUSION**

Because I have determined that ALJ Klingbiel's denial of Graham's benefits was supported by substantial evidence, I affirm the Commissioner's decision.  Accordingly, Graham's motion for reversal (Doc. No. 18) is denied and the Commissioner's motion for an order affirming the decision of the Commissioner (Doc. No.

-23-

19) is granted.  The clerk shall enter judgment accordingly.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

May 9, 2006

cc:  Francis Jackson, Esq.
     Karen Nesbitt, Esq.
     Dennis Bezanson, Esq.
     David L. Broderick, AUSA